UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | Criminal No. 07-101 (JNE/FLN) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Montrell Devornshorn Johnson, | |
| Defendant. | |

Lisa D. Kirkpatrick, Assistant United States Attorney, for the Government.
Manny K. Atwal, Esq., for Defendant.

**THIS MATTER** came before the undersigned United States Magistrate Judge on May 9, 2007, on Defendant's Motion to suppress statements, admissions and answers [#13]. At the hearing, the Court received testimony from Federal Bureau of Investigation ("FBI") Special Agent Patrick Michaels. The Government submitted two exhibits at this hearing. Government's exhibit number one is an advice of rights form dated November 6, 2006. (Gov't Ex. 1.) Government's exhibit number two is an advice of rights form dated March 13, 2007. (Gov't Ex. 2.) Defendant's exhibit number one is a photograph of a location on Prosperity Avenue in St. Paul, Minnesota. (Def. Ex. 1.) This matter was referred to the undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. For the reasons which follow, this Court recommends that Defendant's Motion be denied.

**I. FINDINGS OF FACT**

FBI Special Agent Patrick Michaels (hereinafter referred to as "Special Agent Michaels") testified at the hearing on this matter. Special Agent Michaels is a case agent with the FBI and specializes in bank robberies in the metropolitan area encompassing Minneapolis and St. Paul.

Special Agent Michaels testified that he has been employed with the FBI for one year, and prior to starting his employment he received five months of training from the FBI in investigative techniques. Special Agent Michaels testified that, during his employment with the FBI, he has responded to between 35 and 50 bank robberies.

The Government's case against Defendant Montrell Johnson (hereinafter "Defendant") involves two completed bank robberies and a third attempted bank robbery. The first bank robbery occurred on October 10, 2006, at the Sunray TCF Bank in St. Paul. On October 10, 2006, at approximately six in the evening, a lone black male entered the bank, demanded money from the teller and placed a bag on the counter for the teller to place the money into. The teller did so and the robber fled in an easternly direction with $4,086. Law enforcement responded to the Sunray TCF Bank and conducted interviews with the witnesses involved. In addition, law enforcement officers utilized a canine to track the scent of the robber. The canine tracked the scent of the robber to a dumpster in the back of a nearby grocery store. In the dumpster police found clothing. Special Agent Michaels reviewed the surveillance tape and determined that the clothing that the robber wore looked the same as the clothing recovered from the dumpster. No suspect was arrested at that time.

The second bank robbery also occurred at the Sunray TCF Bank in St. Paul on October 25, 2006. On the afternoon of October 25, 2006, a lone black male came into the bank brandishing a weapon and demanding money from the teller. The teller gave the robber money and the robber fled in an easternly direction. When law enforcement responded they again utilized a canine to track the scent of the robber. The canine picked up the scent of the robber and tracked the scent to the same dumpster that was used by the person who robbed the Bank on October 10, 2006. Upon reaching the dumpster police discovered clothing. Special Agent Michaels reviewed the surviellance footage

of the robber and testified that the clothing discovered in the dumpster was similar to the clothing worn by the robber on October 25, 2006.

On November 6, 2006, there was an attempted robbery at the American Bank in St. Paul. On the morning of November 6, 2006, an individual wearing a ski mask approached the outer doors of the American Bank. The outer doors of the Bank are locked at all times and the person in the ski mask was not admitted. The employees of the American Bank contacted law enforcement and law enforcement used a canine to pick up the scent of the attempted robber. The canine tracked the scent of the would-be robber to an area several blocks away from the Bank on Prosperity Avenue. At that location law enforcement recovered a blue bag, a black baseball hat, a red T-shirt, a ski mask and a firearm.

Special Agent Michaels arrived at the American Bank around noon. Police officers at the scene gave Special Agent Michaels a description of the would-be robber as a black male, between 20 to 25 years old, between five feet eight inches and five feet eleven inches in height, 160 pounds, wearing black pants, a red jacket or sweatshirt, a long white T-shirt and white shoes. Special Agent Michaels asked other officers at the scene to escort him to the spot where the blue bag and other items were recovered on Prosperity Avenue. Special Agent Michaels drove his own vehicle and followed a marked squad car to the location. As he was making his way to the location Special Agent Michaels saw Defendant walking down the street. Special Agent Michaels noticed Defendant because Defendant matched the description of the would-be robber. Special Agent Michaels testified that Defendant caught his eye because he was wearing a red sweatshirt and a long white T-shirt that was hanging out of the red sweatshirt. Special Agent Michaels testified that Defendant was also carrying a white bag. Special Agent Michaels testified that he stopped his vehicle and told

Defendant he wanted to ask Defendant some questions. Defendant replied that he was in a hurry. Special Agent Michaels then proceeded to get out of his vehicle and told Defendant to stop because he wanted to talk to Defendant. The uniformed officers who Special Agent Michaels was following stopped in front of Special Agent Michaels and got out of their marked squad car. As the officers got out of their marked squad car Defendant fled. All three officers pursued Defendant and he was apprehended approximately four to five blocks away. Defendant was arrested at that time and transported to the St. Paul Police Department.

Defendant was interviewed by Special Agent Michaels and another police officer at the St. Paul Police Department approximately one hour after being arrested. Defendant was not handcuffed during this interview. Defendant was advised of his *Miranda* rights by Special Agent Michaels, who provided Defendant with an oral summary of those rights. Special Agent Michaels presented Defendant with Government's Exhibit Number 1, an advice of rights form. Special Agent Michaels told Defendant to read the form. After reading the form Defendant stated that he understood his rights and agreed to speak at that time. Defendant signed the advice of rights form at 3:49 p.m. on November 6, 2006. Defendant's signature was witnessed by Special Agent Michaels and the other officer who was present during the interview. Special Agent Michaels testified that this interview lasted approximately one hour, and that the interview was concluded by Special Agent Michaels. Special Agent Michaels testified that he did not make any threats or promises to Defendant, that Defendant did not appear to be under the influence of any substances, that Defendant did not ask for an attorney and that he appeared to understand the events that occurred. At the end of the interview Defendant was not charged with bank robbery. Special Agent Michaels testified that Defendant consented to provide a sample of Defendant's DNA at that time.

On March 13, 2007, Special Agent Michaels arrested Defendant pursuant to a federal arrest warrant. Defendant was arrested in the Hennepin County Jail where he was being held on unrelated narcotics charges. Special Agent Michaels interviewed Defendant on March 13, 2007. Special Agent Michaels advised Defendant of his *Miranda* rights. Defendant stated that he understood his *Miranda* rights and agreed to talk to Special Agent Michaels. Special Agent Michaels testified that he did not have Defendant sign an advice of rights waiver form at that time because he did not have a copy of the form with him at that time. Special Agent Michaels then proceeded to interview Defendant and another FBI agent was present during this interview. Defendant was not handcuffed during this interview and Special Agent Michaels testified that he did not make any threats or promises to Defendant during the interview. Special Agent Michaels testified that Defendant did not appear to be under the influence of any substances at the time of the interview. This interview lasted approximately 15 minutes and was concluded by Special Agent Michaels. Defendant did not ask to stop the interview and did not ask for an attorney during the interview.

After concluding the interview Special Agent Michaels, along with FBI Special Agent Niven, handcuffed Defendant and drove Defendant from the Hennepin County Jail to the United States Marshal's Office. While in the squad car Defendant began asking questions about his situation, and Special Agent Michaels informed Defendant that he was being taken into federal custody. When Special Agent Michaels arrived at the Marshal's Office he stopped the vehicle in the parking garage and advised Defendant of his rights again while in the vehicle. Defendant stated that he understood his rights and spoke with Special Agent Michaels for approximately 15 minutes in the squad car in the parking garage of the Marshal's office. During this discussion Defendant made incriminating statements regarding his involvement in the bank robberies under investigation.

After speaking with Defendant in the squad car for approximately 15 minutes Special Agent Michaels moved the interview inside into a cell block at the Marshal's office. Defendant was handcuffed during the move between the parking garage and the holding cell at the Marshal's office but was not handcuffed during the subsequent interview. Defendant was interviewed in a holding cell in the United States Marshal's Office for approximately 45 minutes to one hour. During this interview Defendant made admissions of his involvement with all three bank robberies under investigation. Special Agent Michaels testified that he did not make any threats or promises to Defendant during this interview, and that Defendant appeared to understand what was occurring. Special Agent Michaels testified that Defendant did not appear to be under the influence of any substances, nor was he injured at the time he made the incriminating statements. Special Agent Michaels further testified that Defendant never asked to stop the interview, nor did he ask to speak to an attorney at any time during the interview. Special Agent Michaels concluded the interview after he had gathered all the information he requested. Special Agent Michaels testified that he showed Defendant an advice of rights form at the conclusion of this interview and told Defendant that this form explained the rights that Special Agent Michaels had explained to him previously. Special Agent Michaels told Defendant to review the form. Special Agent Michaels told Defendant to sign the form only if the rights on the form were the same rights that Special Agent Michaels had previously explained to Defendant. Defendant reviewed and signed the advice of rights form. (Gov't Ex. 2.) Special Agent Michaels and Special Agent Niven also signed the advice of rights form.

Defendant now moves to suppress the statements made on November 6, 2006, and March 13, 2007. Defendant argues that the statement he made on November 6, 2006, was the product of

an unlawful arrest and must be suppressed. Defendant further argues that the statements Defendant made on March 13, 2006, were involuntary and must be suppressed.

## II.   CONCLUSIONS OF LAW

A. **Special Agent Michaels Had Probable Cause to Arrest Defendant on November 6, 2006; Therefore, the Statement and DNA are Admissible.**

Whether an arrest is constitutionally valid

> depends in turn upon whether, at the moment the arrest was made, the officers had probable cause to make it-whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [defendant] had committed or was committing an offense.

*Beck v. Ohio*, 379 U.S. 89, 91 (1964). The Eighth Circuit noted that "[p]robable cause is also determined by the totality of the circumstances--giving weight to the inferences police officers draw from their experiences." *United States v. Castro-Gaxiola*, 479 F.3d 579, 584 (8th Cir.2007) (citing *United States v. Sherrill*, 27 F.3d 344, 347 (8th Cir.1997)). Although "bare suspicion of criminal activity is not sufficient to establish probable cause, police are not required to have enough evidence to justify a conviction before they make a warrantless arrest." *United States v. Adams*, 346 F.3d 1165, 1169-70 (8th Cir.2003).

In the present case Special Agent Michaels had probable cause to arrest Defendant once Defendant fled police. Special Agent Michaels testified that he initially pulled over to speak to Defendant because Defendant matched the description of the would-be robber. Defendant was the same race, height, and weight of the would-be robber, and was wearing the same clothes described by witnesses, down to the oversized white T-shirt hanging out underneath the red sweatshirt[1]. Not

---

[1] The fact that police officers had already recovered a red T-shirt on Prosperity Avenue, as a result of the canine tracking, is irrelevant to this analysis.

only did Defendant match the description of the would-be robber, but he was spotted within the immediate vicinity of the attempted robbery within a short period of time from the attempted robbery. The fact that Defendant was spotted within the immediate vicinity of the attempted robbery, within a short time after the attempted robbery, that Defendant met the description of the would-be robber, down to the distinctive long white T-shirt hanging out of the red sweatshirt, and that Defendant attempted to run away from police who tried to speak with him provided Special Agent Michaels with probable cause to arrest Defendant. At the moment of Defendant's arrest the facts and circumstances within Special Agent Michaels's knowledge were "sufficient to warrant a prudent man in believing" that Defendant was the person who had attempted to rob the American Bank on that day. *Beck*, 379 U.S. at 91. As the Court concludes that Special Agent Michaels had probable cause to arrest Defendant once he fled from police, the Court recommends that Defendant's motion to suppress the November 6, 2006, statement, and Defendant's motion to suppress the DNA sample Defendant provided on November 6, 2006, be denied, because neither the statement nor the DNA sample were the product of an unlawful arrest.

> **B.     The Statements Defendant Made on March 13, 2007, Were Preceded by a *Miranda* Warning and Were Voluntary.**

Defendant argues that the statements he made on March 13, 2007, were involuntary. If statements are induced by threats, promises, or in any other way in which the suspect's will is overborne, the statements are not voluntary and are inadmissible. *See Haynes v. Washington*, 373 U.S. 503, 513 (1963). "The test used to apply this constitutionally based standard is whether, in light of the totality of the circumstances, pressures exerted upon the suspect have overborne his will." *United States v. Jorgenson*, 871 F.2d 725, 729 (8th Cir.1989) (citing *Haynes*, 373 U.S. at 513-14.) The voluntariness inquiry centers upon: (1) the conduct of law enforcement officials in creating

pressure; and (2) the suspect's capacity to resist that pressure. *Jorgenson*, 871 F.2d at 729 (citing *Colorado v. Connelly*, 479 U.S. 157 (1986)). Coercion by a state actor is a necessary element in satisfying this test. *See Russell v. Jones*, 886 F.2d 149, 151 (8th Cir.1989).

The Court has reviewed the testimony in this case and concludes that Defendant's multiple statements on March 13, 2007, were all voluntary. Special Agent Michaels testified that he did not make any threats or promises to Defendant during the questioning. There was no other testimony that established any evidence to support a conclusion that Special Agent Michaels, or any other agent present during Defendant's interrogation, coerced Defendant into making any statements, or that Defendant's statements were otherwise involuntary.

Special Agent Michaels advised Defendant of his *Miranda* rights at the beginning of the interview on March 13, 2007. Defendant stated that he understood his rights and he agreed to waive his rights. Defendant did not ask for an attorney and did not ask to stop the questioning. The first interview lasted approximately 15 minutes, and concluded with Defendant denying any involvement in the bank robberies. After concluding the interview Special Agent Michaels transported Defendant to the United States Marshal's Office, and during that transport Defendant began asking questions about his situation. Once in the parking garage of the United States Marshal's office, Special Agent Michaels again advised Defendant of his *Miranda* rights. Defendant stated that he understood his *Miranda* rights and agreed to talk. Special Agent Michaels testified that he did not make any threats or promises to Defendant during this exchange. Special Agent Michaels then transported Defendant upstairs to a holding cell in the United States Marshal's office. Special Agent Michaels testified that he did not make any threats or promises to Defendant during this interview. Special Agent Michaels testified that Defendant did not appear to be under the influence, Defendant appeared to understand

everything that was going on, Defendant was not injured, and Defendant never asked to stop the interview nor did he ask for an attorney. Once the interview concluded, Special Agent Michaels presented Defendant with an advice of rights form and informed him that the form contained all of the rights that Special Agent Michaels had previously discussed with Defendant.[2] Special Agent Michaels told Defendant to sign the form if Defendant agreed that the rights on the form were the same rights previously described to Defendant. Defendant signed the advice of rights form.

Pursuant to *Miranda v. Arizona*, 384 U.S. 436, 444 (1966), "an individual must be advised of the right to be free from compulsory self-incrimination, and the right to the assistance of an attorney, any time a person is taken into custody for questioning." *United States v. Griffin*, 922 F.2d 1343, 1347 (8th Cir.1990). Any statements taken in violation of this directive are subject to suppression. *Miranda*, 384 U.S. at 476. The Court concludes that the statements taken from Defendant on March 13, 2007, were voluntary and were taken after Defendant was properly advised of his *Miranda* rights. Therefore, the Court recommends that Defendant's motion to suppress be denied.

### III.  RECOMMENDATION

Based upon all the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED** that Defendant's Motion to suppress statements, admissions and answers [#13]

---

[2] The Court is more than a little troubled by the fact that Defendant was asked to sign an advice of rights form at the conclusion of the custodial interrogation. The Constitution, as interpreted by the Supreme Court requires that a suspect knowingly and voluntarily waive his rights *before* any interrogation begins. Signing a waiver form *after* the interrogation is over can have no legal effect, other than to cast doubt on the agent's credibility. In this case, the Court chooses to believe the agent's explanation for why the form was signed at the conclusion rather than at the beginning of the interrogation. As a general matter, the Court observes that such a practice will more often hurt than help the government's presentation of its case.

be **DENIED**.


DATED: May 30, 2007                              s/ *Franklin L. Noel*
                                                 FRANKLIN L. NOEL
                                                 United States Magistrate Judge


Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, on or before **June 18, 2007**, written objections which specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within ten days after service thereof. All briefs filed under the rules shall be limited to 3,500 words. A judge shall make a de novo determination of those portions to which objection is made.

Unless the parties are prepared to stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and cause to be filed by **June 18, 2007,** a complete transcript of the hearing.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeals.